# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

DOMPATCI MANAGEMENT SOLUTIONS,

    Plaintiff,

v.

VENSURE HR, INC., et al.,

    Defendants.

No. 2:17-cv-02399-KJM-AC

ORDER

In this breach of contract case, defendant Vensure moves for summary judgment on all of plaintiff Dompatci's claims. For the reasons below, the court GRANTS defendant's motion in part.

I.    BACKGROUND

On January 9, 2014, Dompatci Management Solutions ("Dompatci"), a temporary employee provider, contracted with Vensure, a "Professional Employment Organization," for the provision of services related to Dompatci's temporary employees, including payroll services and the procurement of workers' compensation insurance. Mot. for Summ. J. ("Mot."), ECF No. 40-1, at 5–6; Compl. ¶¶ 9–10, 16, 23, ECF No. 1-1. It is undisputed that the governing contract between the parties is the Client Services Agreement (CSA), which is attached to the complaint

and to Vensure's motion for summary judgment. Compl. ¶ 9 & Ex. A ("CSA"); Pittard Decl., Ex. A, ECF No. 40-3. It is also undisputed that, while the CSA was in effect, an error occurred on at least one occasion that caused several Dompatci employees' paychecks to bounce. Statement of Undisputed Facts (SUF) 8–10, ECF No. 40-2; Compl., Ex. B (letter from Vensure to Dompatci). The parties disagree over Vensure's response to the error. *Compare* Holmes Decl. ¶¶ 2–3, ECF No. 47 (stating Vensure failed to provide paychecks and "bounced checks on multiple occasions with fees that were then covered by Dompatci."), *with* Pittard Decl. ¶¶ 14–15 (stating Vensure contacted Dompatci regarding the error, and issued corrected paper checks to the affected employees, per Dompatci's request). A letter from Vensure to Dompatci attached to Dompatci's complaint suggests that, on at least one occasion, Vensure communicated with Dompatci about the error and offered to pay the associated fees. Compl., Ex. B. Dompatci alleges that, as a result of this error and several others, including Vensure's alleged failure to secure the correct workers' compensation policy, Dompatci lost two lucrative contracts with FedEx and Comcast. Opp'n ¶¶ 2–4; Compl. ¶¶ 38, 48.

On August 10, 2017, Dompatci filed the instant complaint in state court alleging claims against Vensure for: (1) breach of contract; (2) negligent interference with economic relationship (as to FedEx); (3) negligent interference with economic relationship (as to Comcast); (4) intentional interference with economic relations (as to FedEx); (5) intentional interference with economic relations (as to Comcast); (6) intentional misrepresentation of fact; and (7) fraud and deceit. Compl. at 3–15. On November 14, 2017, defendants removed the case to this court based on diversity jurisdiction. Not. of Removal, ECF No. 1, at 1.

Although neither party cites a specific provision of the CSA that Vensure allegedly breached, the following two provisions are the most relevant to Dompatci's claims:

> In exchange for receipt of the Combined Total Fees . . . VENSURE shall provide CLIENT with administrative services which include, but are not limited to: issuing payroll checks, withholding and paying all applicable federal, state, and local payroll taxes; processing garnishments and unemployment claims and inquiries related thereto; generating W2's [sic]; obtaining, through a licensed insurance agent, and administering CLIENT's workers'

2

> compensation coverage and any other non-obligatory benefits which CLIENT wishes to provide its employees.

CSA at 40, ¶ 2.

> VENSURE shall secure for CLIENT, workers' compensation insurance, through a properly licensed insurance agency, and shall perform all employer administrative tasks associated with the policy of insurance, including, but not limited to, the reconciliation, reporting and payment of payroll and premium to the Insurer.

CSA at 44, ¶ 6a.

On June 21, 2019, approximately two months after the close of fact discovery, Vensure filed the instant motion for summary judgment on all Vensure's claims against it. Mot., ECF No. 40; Am. Sched. Order, ECF No. 37 ("All discovery shall be completed by April 30, 2019). Dompatci opposed the motion, Opp'n, ECF No. 46, but agreed to dismiss its second and third claims. Joint Report ¶ 2, ECF No. 43.[1] Vensure replied. Reply, ECF No. 49. The court heard oral argument on the motion on November 6, 2019, and resolves it here.

II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

---

[1] As Vensure points out in its Reply, Dompatci failed to comply with Local Rule 260(b), which requires the party opposing a motion for summary judgment to address the movant's Statement of Undisputed Facts. Though this failure has meant the court has taken more time than it should have had to in order to resolve the matter on the merits, with concomitant delay for the parties, the court has deduced the undisputed facts by comparing defendant's list of undisputed facts to plaintiff's narrative of facts in opposition and corresponding evidence.

[2] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

III. DISCUSSION

    A. Applicable State Law

Because this court has diversity jurisdiction over plaintiffs' state-law contract claims, the court must apply state substantive law to the interpretation of the contract. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In order to decide which state's law applies, the court uses the choice-of-law rules of the forum state, California. *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007) (citing, *inter alia*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

        1. Enforceability of Choice-of-Law Provision

Vensure argues Dompatci's claims should be governed by Arizona law, because the two parties' CSA contains an Arizona choice-of-law provision. CSA ¶ 13. California follows section 187 of the Second Restatement of Conflict of Laws, which states that a contractual choice-of-law provision generally will be enforced as long as "the chosen state has a substantial relationship to the parties or their transaction, or [] there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992) (citing Restatement (Second) of Conflict of Laws § 187 (1971)). If either test is met, "the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California," and, if so, whether California has "a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (emphasis in original) (citation omitted).

Here, there is a substantial relationship to justify using Arizona law, because Vensure is "organized, incorporated and has its principal place of business in Arizona." Mot. at 8; Compl. ¶ 3 (Vensure is an Arizona corporation doing business in California), ECF No. 1-1; *Wright v. Freedom Mortg. Corp.*, No. 09-CV-630 JLS (POR), 2009 WL 10671337, at *2 (S.D. Cal. May 26, 2009) (substantial relationship exists where defendant organized under chosen state's laws and had principal place of business there) (citing *Nedlloyd*, 3 Cal. 4th 467); Restatement (Second) of Conflict of Laws § 187, cmt. f (substantial relationship exists where one party has its principal place of business in the chosen state). Neither party has identified any aspect of relevant Arizona law that is contrary to a fundamental policy of California, and plaintiff

was unable to do so when asked at hearing. *Bard Water Dist. v. James Davey & Assocs., Inc.*, No. 13CV2727 JM (PCL), 2018 WL 1177522, at *4 (S.D. Cal. Mar. 5, 2018) ("Because Arizona law has not been identified as being contrary to a fundamental policy of California, the court will enforce the parties' choice of law provision."). Accordingly, unless an exception applies as discussed below, Arizona law governs Dompatci's claims against Vensure, because all the claims at issue are related to the CSA. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007) (citing *Nedlloyd,* 3 Cal. 4th at 470 (agreement's choice-of-law clause applies to "all causes of action arising from or related to that agreement")); *Olinick v. BMG Entm't,* 138 Cal. App. 4th 1286, 1300 (Ct. App. 2006) (choice-of-law clause applies to claims that are "inextricably intertwined with the construction and enforcement" of contract)).

2. Contracts of Adhesion

There is an exception to the substantial relationship test if the choice-of-law provision is contained in a contract of adhesion, "namely one that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Scarpone v. Empire Blue Cross Blue Shield*, No. C-95-2094 MHP, 1996 WL 231026, at *4 (N.D. Cal. Apr. 29, 1996) (quoting Restatement (Second), Conflicts of Law § 187 cmt. b (1971)). Under this exception "the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that 'substantial injustice' would result from its enforcement or that superior power was unfairly used in imposing the contract" *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 918 (2001) (citations omitted).

Dompatci argues the choice-of-law provision should not be enforced because its contract with Vensure was one of adhesion. *See* Opp'n ¶ 12. Dompatci is potentially equitably estopped from making this argument, given that it is suing for enforcement of the very contract containing the choice-of-law provision. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" (citation omitted)). But

the court need not decide that question, because Dompatci does not provide sufficient evidence to show that enforcing the choice-of-law provision would result in "substantial injustice" or that Dompatci's agreement was improperly obtained. In its opposition, Dompatci argues it was forced to accept the contract with Vensure, because Advance, its previous contractor, ceased its work for Dompatci and told Dompatci it was "required" to do business with Vensure instead. Opp'n ¶ 12. Dompatci adds that Vensure is a large corporation, while Dompatci was a "small mom and pop shop" at the time, so the power dynamic was unequal. *Id.* The only evidence to support this argument is a declaration by Dompatci's CEO stating simply, "Plaintiff was told by Advance that they had to work with Vensure to provide the services previously provided by Advance." Holmes Decl. ¶ 7, ECF No. 47. Dompatci's mere argument that it was a smaller company than Vensure and that Advance pressured Dompatci into contracting with Vensure is insufficient for the court to find the choice-of-law provision unenforceable here. *Tuttle v. Sky Bell Asset Mgmt., LLC*, No. C 10-03588 WHA, 2011 WL 4596003, at *2 (N.D. Cal. Sept. 13, 2011) (placing burden on plaintiff to show forum selection clause should not be enforced); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) ("That there may not have been actual negotiations over the clause does not affect its validity.") (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991)). The court will apply Arizona law to Dompatci's claims.

B. <u>Breach of Contract Claim (Claim One)</u>

The elements of a breach of contract claim are: (1) the existence of a contract; (2) breach; and (3) resulting damages. *See First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 353 (2016) (citing *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)). The existence of a contract is not disputed here. As for the second element, Vensure has met its initial burden of demonstrating the lack of evidence for Dompatci's breach of contract claim by providing a declaration from its Vice President of Operations describing Vensure's compliance with the contract. Pittard Decl. ¶¶ 6, 8, 9, 12–17, ECF No. 40-3; *see also Celotex*, 477 U.S. at 325 (describing movant's burden on summary judgment). Accordingly, the burden shifts to Dompatci to present specific facts showing a genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 587.

In its verified complaint, Dompatci alleges Vensure breached the parties' contract in several ways: (1) failing to "provide good funds for the payment of Plaintiffs [sic] temporary employees," Compl. ¶ 12, "provide payroll on time, unilaterally cancelling employees [sic] direct deposit requests, and [] failing to pay the temporary employees" with respect to the FedEx account, *id.* ¶ 19; *see also id.* ¶ 15; (2) failing to "properly bill FedEx," *id.* ¶¶ 15, 19; and (3) failing to "select the appropriate workers compensation insurance for Plaintiffs [sic] temporary employees and overcharg[ing] Plaintiff for the wrong coverage" with respect to both the FedEx and Comcast accounts, *id.* ¶¶ 13–15, 19–20. Vensure moves for summary judgment, arguing there is no evidence to contradict the declaration of Vensure's VP of Operations averring Vensure fulfilled the terms of the contract. Mot. at 9.[3]

1. Billing and Payroll Issues

According to the verified complaint and a declaration of Dompatci's CEO, Vensure paid employees late, caused payroll checks to bounce, and "unilaterally took temp associates off of direct deposits," causing injury to Dompatci. Holmes Decl. ¶¶ 3, 6; Compl. ¶¶ 10, 15. However, nowhere in the complaint, the opposition, the Holmes declaration nor at hearing, did Dompatci identify a provision of the parties' contract that Vensure breached by doing so. *See* Compl. ¶ 10 (stating, without reference to the CSA, "Vensure was to collect the money paid to Plaintiff . . . pay the temporary employees hired by Plaintiff, secure and pay for workers compensation insurance . . . . and remit any profits thereafter to Plaintiff."). Nor does Dompatci argue that Vensure breached an implied covenant, such as a covenant of good faith and fair dealing. *See* Compl. ¶¶ 8–9 (describing "contract that is the subject of this action" as Ex. A, the CSA); *see also Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 423 (2002) (every contract includes "an implied covenant of good faith and fair dealing"). The most relevant contractual provisions require Vensure to "provide [Dompatci] with administrative services which include, but are not limited to: issuing payroll checks[.]" CSA ¶ 2. The language of the contract is not specific

---

[3] Vensure's summary judgment motion is often worded like a motion to dismiss. *See, e.g.*, Mot. at 9 ("Plaintiff has failed to plead the facts necessary to support a claim for breach of contract[.]"). As the motion is framed as one for summary judgment, the court construes it as such.

8

regarding how Vensure was required to issue payroll checks or whether the checks were to be issued in accordance with a certain timetable.

Vensure has successfully shown there is a lack of evidence supporting the second element of a breach-of-contract claim: breach of an existing contract. *Underwood*, 1999 WL 430138, at *1 ("A conclusory statement asserting an absence of evidence will not suffice to meet this standard; the lack of evidence must be demonstrated."). There is no genuine dispute of material fact regarding whether Vensure breached the CSA with respect to its payroll errors, and therefore summary judgment must be granted in Vensure's favor. *See Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751 (9th Cir. 2001) ("Where discovery has been completed, summary judgment is appropriate when a party challenged by motion fails to offer evidence supporting an element of a claim on which that party bears the burden of proof at trial." (citing *Celotex Corp.*, 477 U.S. at 322–24)).

The same is true of the claim that Vensure breached the contract by failing to properly bill FedEx. Compl. ¶¶ 15, 19. Neither party has identified a provision of the CSA requiring Vensure to bill Dompatci's clients, and the court has not located one in its own review of the CSA. There is no genuine factual dispute regarding whether Vensure's billing errors breached the CSA.

Finally, for the first time in opposition, Dompatci argues a theory of liability not encompassed by the complaint, namely that Vensure breached the CSA by failing to "provide the appropriate billing information to Advance so that they could properly process bills and rebills to all end clients of Dompatci." Opp'n ¶ 5; Holmes Decl. ¶¶ 11–12. Again, Dompatci has identified no provision of the CSA that required Vensure to provide information to Advance. There is no genuine dispute of material fact as to a breach of contract on this basis either.

### 2. Workers' Compensation Insurance Issues

Similarly, Dompatci relies on its verified complaint and its CEO's declaration to support the allegations Vensure "did not select the proper insurance with regard to the Comcast contract," Holmes Decl. ¶ 10, and failed to "select the appropriate workers compensation

insurance for Plaintiffs [sic] temporary employees and overcharged Plaintiff for the wrong coverage" with respect to the FedEx and Comcast business, Compl. ¶¶ 13–15, 19–20; *see also* Holmes Decl. ¶ 13. Again, Dompatci does not identify a provision in the contract Vensure breached. The most relevant provision in the CSA states:

> VENSURE shall secure for CLIENT, workers' compensation insurance, through a properly licensed insurance agency, and shall perform all employer administrative tasks associated with the policy of insurance, including, but not limited to, the reconciliation, reporting and payment of payroll and premium to the Insurer.

CSA ¶ 6a. Dompatci's vague allegation that the purchased insurance was not "appropriate" or provided the "wrong coverage," does not support a viable breach-of-contract claim, as it does not describe a specific breach of the contract language above. At this stage in the litigation, with discovery completed, Dompatci must be able to point to evidence in the form of specific admissible facts creating a genuine issue for trial. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Dompatci has failed to do so here, and therefore summary judgment must be granted in Vensure's favor on the breach-of-contract claims.

### 3. Conclusion

For the reasons described above, Vensure's motion for summary judgment is GRANTED with respect to Dompatci's breach of contract claims against it.

### C. Tortious Interference with Contractual Relationship Claims (Claims Four and Five)

In addition to the breach of contract claims, Dompatci also brings two claims for "tortious interference with economic relations" regarding the FedEx and Comcast contracts, respectively. Compl. at 8–12. Vensure argues the claims are more accurately described as "tortious interference with contractual relationship or business expectancy." Mot. at 12. Regardless of the precise title, both claims require: "(1) the existence of a valid contract or

business expectancy; (2) the defendant's knowledge thereof; (3) intentional interference inducing or causing a breach or termination thereof; and (4) damages." *Mortensen v. Gust Rosenfeld, PLC*, No. 1 CA-CV 14-0262, 2015 WL 6472368, at *7 (Ariz. Ct. App. Oct. 27, 2015) (elements for tortious interference with economic relations) (citation omitted); *see also Helal v. Winski*, No. 1 CA-CV 14-0201, 2015 WL 8927725, at *7 (Ariz. Ct. App. Dec. 15, 2015) (listing same elements for "tortious interference with contractual relations or business expectancy" claims). "[T]he interference must be improper as to motive or means before liability will attach" *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 427 (Ariz. Ct. App. Div. 1995) (internal quotations marks and citation omitted).

        Dompatci's allegations with respect to the FedEx contract incorporate many of the same billing and payroll issues identified above. *See* Compl. ¶ 37. With respect to the Comcast contract, Dompatci again alleges simply that Vensure "secured the wrong workers compensation to cover the temporary workers doing work at Comcast." *Id.* ¶ 47.

        Vensure has met its initial burden on summary judgment of showing the absence of evidence suggesting Vensure had an improper motive or means by which it interfered with either contract. Vensure offers the declaration of its VP of Operations, as well as a letter from Vensure to Dompatci attached to Dompatci's complaint, both of which support the narrative that Vensure made a "banking error" which caused a group of employees' checks to bounce, it communicated with Dompatci about the mistake, and it offered to pay the associated fees. Pittard Decl. ¶¶ 13–15; Compl., Ex. B, ECF No. 1-1, at 57 (letter from Vensure to Dompatci regarding "Notification of Banking Error"). As to Dompatci's other allegations, the Pittard declaration states "Vensure procured and provided adequate workers' compensation insurance to Dompatci's employees and charged Dompatci the appropriate amount for the coverage" and Vensure "fulfilled all terms of the contract" it had with Dompatci. Pittard Decl. ¶¶ 8, 16, 17; *see also Fed. Trade Comm'n v. Marshall*, No. 17-56476, 2019 WL 3202772, at *1 (9th Cir. July 16, 2019) (finding court must still consider self-serving declaration where "it contained some statements that were based on personal knowledge, legally relevant, and internally consistent." (citation and internal quotations omitted)). Therefore, the burden shifts to Dompatci to present evidence

showing there is a genuine issue of material fact as to whether Vensure acted intentionally, with improper means or motive, to interfere with Dompatci's contracts. *Matsushita*, 475 U.S. at 587.

Dompatci has not met this burden. The "improper" element required for a tortious interference with contractual relations claim "generally is determined by weighing the social importance of the interest the defendant seeks to advance against the interest invaded." *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 216 Ariz. 185, 188 (Ct. App. 2007) (citing *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 11 (2005)). Arizona courts consider the seven factors listed in section 767 of the Restatement (Second) of Torts (1979):

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

*Id.* (citation omitted).

Dompatci does not make any argument in its opposition with respect to the impropriety of Vensure's motive or means. In its verified complaint, Dompatci lists the "wrongs" allegedly committed by Vensure including the allegation that Vensure was made aware of the bounced paychecks problem and failed to correct it, Compl. ¶ 37, which may support an inference the error was intentional but does not suggest it was improperly motivated or carried out. Other than conclusory statements, *see id*. ¶ 41 ("Defendant knew of this Contract and Committed intentional acts designed to induce a disruption of the contract . . . ."), and recitations of the law, *id.* ¶¶ 42–43 (stating legal standards regarding requirement of intent under California law), Dompatci's only evidence in support of the element of intent with improper motive or means is its CEO's declaration, which states, in relevant part:

> 12. Plaintiff has reason to believe that these were intentional acts as the amount of time that it took for Defendant to correct their mistakes was vast. The delay in providing the needed information to Advance prevented Dompatci from collecting on its contracts with

12

> its vendors which ultimately resulted in Dompatci closing its doors, as it was not able to continue to operate.
>
> 13. Defendant was overcharging Plaintiff for workers compensation services and did so on more than one occasion. Plaintiff believes it can show this by demonstrating corrections that Plaintiff sought and obtained from Defendant and through competitive bids from other companies

Holmes Decl. ¶¶ 12–13. Again, Dompatci's CEO raises the issue of Vensure's alleged failure to provide information to Advance, which was not pleaded in the complaint. Even assuming this allegation can now form the basis for claims four and five, Dompatci's evidence is insufficient to create a genuine dispute of material fact. The delay in Vensure's response to its errors and Vensure's "overcharging" Dompatci by an unspecified amount on "more than one occasion" is not sufficiently particularized or developed to raise an inference that Vensure's actions were improper. Dompatci's evidence is simply too vague to raise a genuine issue of material fact as to the element of impropriety. Accordingly, summary judgment is GRANTED in Vensure's favor as to claims four and five.

### D. Fraud Claims (Claims Six and Seven)

Dompatci's sixth and seventh claims against Vensure are, respectively, for "intentional misrepresentation of fact" and "fraud and deceit." Compl. at 12–13. These claims are premised on the allegation that Vensure falsely represented it "could handle the bookkeeping, accounting, billing, payment of workers, and purchasing of workers compensation insurance on behalf of Dompatci," when, in fact, it could not. Compl. ¶¶ 56–57, 62–63. Both are essentially are claims for fraud, which requires the following elements:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Nielson v. Flashberg*, 101 Ariz. 335, 338–39 (1966).

Vensure only attacks the sufficiency of Dompatci's evidence by arguing "the facts show that Vensure at all times acted in accord with the CSA and provided all of the services

contracted for." Mot. at 17. Dompatci offers some evidence to suggest Vensure made repeated mistakes with respect to the bookkeeping, accounting, billing, payment of workers and purchasing of workers' compensation insurance. *See* Holmes Decl. ¶¶ 3, 5–6, 10–11 (stating, *inter alia*, "Defendant, Vensure, did not select the proper insurance with regard to the Comcast contract, as Vensure, Dompatci and Comcast were all sued by a temporary employee who worked at Comcast because the insurance was improperly selected"). Construing the evidence in the light most favorable to Dompatci, there exists a genuine dispute of material fact as to whether Vensure was able to perform in the way it allegedly represented to Dompatci. Therefore, Vensure has not met its burden here of showing the absence of material factual disputes, and summary judgment is improper on these claims.

IV. CONCLUSION

Vensure's motion for summary judgment is GRANTED with respect to all claims except claims six and seven.

Vensure's motion for summary judgment as to claims six and seven, is DENIED.

This order resolves ECF No. 40.

IT IS SO ORDERED.

DATED: March 11, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE

14